UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIER KEAND'E GARDNER,

                Plaintiff,

    v.

WHATCOM COUNTY, et al.,

                Defendants.

Case No. C19-1451-MJP-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a 42 U.S.C. § 1983 prisoner civil rights action. Kier Keand'e Gardner ("Plaintiff"), proceeding *pro se*, filed an amended complaint alleging numerous violations of his constitutional rights during his pretrial incarceration at the Whatcom County Jail ("WCJ") between October 5, 2014 and October 25, 2016. (Am. Compl. (Dkt. # 7) at 1-2.) Defendants filed a motion for summary judgment ("Defendants' Motion"), principally arguing Plaintiff failed to exhaust his administrative remedies prior to bringing this action. (Def.'s Mot. (Dkt. # 34) at 1-2.) Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends Defendants' Motion (dkt. # 34) be GRANTED and that Plaintiff's claims be

REPORT AND RECOMMENDATION - 1

1  DISMISSED without prejudice. Consequently, the Court recommends that Plaintiff's Motion for
2  Judicial Notice (dkt. # 42) be DENIED as MOOT.

3  **II.     BACKGROUND**

4  **A.     Procedural History**

5  On September 18, 2019, Plaintiff submitted his original complaint to the Court for filing.
6  (Compl. (Dkt. # 5).) Plaintiff alleged various violations of his First, Eighth, and Fourteenth
7  Amendment constitutional rights during his pretrial incarceration at WCJ between October 5,
8  2014 and October 25, 2016. (*Id.* at 5-11.) This Court declined to serve Plaintiff's initial
9  Complaint due to deficiencies and granted leave to amend. (Dkt. # 6.)
10 On October 2, 2019, Plaintiff submitted an amended complaint against Defendants
11 Whatcom County, Whatcom County Sherriff Bill Elfo ("Sherriff Elfo"), Whatcom County Chief
12 of the Corrections Bureau Wendy Jones ("Chief Jones"), Whatcom County Sherriff "Keeley"
13 (herein referred to as Whatcom County Corrections Deputy Timothy Kiele ("Deputy Kiele")),
14 WCJ Lieutenant Ernie Stach ("Lieutenant Stach"), "Unknown Booking Officer," and "Unknown
15 Mailroom Officer." (Am. Compl. at 1.) On October 9, 2019, the Court directed service of
16 Plaintiff's amended complaint on Defendants but declined to serve "Unknown Mailroom
17 Officer" or "Unknown Booking Officer" because Plaintiff did not identify either with enough
18 specificity for the Court to order service. (Order (Dkt. # 12).)
19 On December 9, 2019, Defendants answered Plaintiff's amended complaint, denying its
20 allegations. (Answer (Dkt. # 20).) The parties engaged in discovery through March 10, 2020, and
21 this Court granted an extended dispositive motion period upon Defendants' motion. (Order (Dkt.
22 # 28).) On May 8, 2020, Defendants' Motion was filed. (Def.'s Mot.) On May 27, 2020, Plaintiff
23

1  filed his response. (Resp. (Dkt. # 39).) On June 5, 2020, Defendants filed their Reply. (Reply

2  (Dkt. # 41).)

3        On June 12, 2020, Plaintiff filed a "Motion for Judicial Notice" requesting the Court to

4  take judicial notice of various information asserted in his claims, including that: (1) Plaintiff's

5  legal name is "Kier Keand'e" and not "Kier Keand'e Gardner"; (2) Whatcom County is

6  withholding evidence from the record; (3) Plaintiff properly grieved his claims; and (4) Chief

7  Jones barred Plaintiff from utilizing the law library. (Pl.'s Mot. (Dkt. # 42) at 2-8.)

8      **B.**    **Plaintiff's Claims**

9        At all times relevant to Plaintiff's claims, Plaintiff resided at WCJ, arriving as a pre-trial

10  detainee on October 5, 2014. (Jones Dec. (Dkt. # 35) at ¶ 3; Pl.'s Dec. (Dkt. # 39) at ¶ 4.)

11  Plaintiff was housed in administrative segregation at multiple times during his incarceration at

12  WCJ: one day on December 4, 2014; three days beginning on June 24, 2015; and one day on

13  October 21, 2016. (Jones Dec. at ¶ 5.) Plaintiff additionally spent multiple two-week periods at

14  Western State Hospital while still an inmate at WCJ. (*Id.* at ¶ 3.) On October 25, 2016, Plaintiff

15  was transferred to Department of Corrections ("DOC") custody and is currently detained at the

16  Washington State Penitentiary in Walla Walla, Washington. (*Id.* at ¶ 24.)

17            *i.*    *Access to Courts Claims*

18        Plaintiff initially argues under his first two claims that he was deprived access to the

19  courts due to Defendants' interference with his access to the law library and legal materials in

20  violation of his First Amendment rights. (Am. Compl. at 6-12; Resp. at 14-18, 22-24.) Plaintiff

21  was pro se briefly in 2015, but was later represented by counsel from July 8, 2015, throughout

22  the length of his criminal case in September 2016. (Jones Dec. at ¶¶ 19-20.)

23

1    Plaintiff argues under his first claim for relief that Whatcom County, Chief Jones, and
2 Sherriff Elfo violated his First Amendment right to affirmative assistance by implementing and
3 executing a policy that did not provide access to a law library or adequate assistance from
4 law-trained individuals to assist inmates. (Am. Compl. at 6; Resp. at 14-23; Pl.'s Dec. at ¶¶ 7-19,
5 Ex. A at 62-68, Ex. C at 94-98.) Plaintiff alleges that, at multiple points during his time at WCJ,
6 he attempted to grieve this issue by requesting access to a law library through an Inmate Request
7 Form (herein referred to as "kite") and was told by Chief Jones that WCJ does not provide access
8 to a law library or that such issue was "non-grievable." (Am. Compl. at 7; Pl.'s Dec. at ¶¶ 7-9,
9 12, Ex. A at 62-68.)
10   Defendants respond that at all times while Plaintiff was at WCJ, he was afforded access
11 to Whatcom County Law Library materials that are housed at the Whatcom County Courthouse.
12 (Jones Dec. at ¶ 20.) Access is provided by making law library requests through forms available
13 within the jail, routing the completed request forms to the Whatcom County Law Librarian, and
14 then delivering the requested material to the inmate once prepared. (*Id.*; Pl.'s Dec. at ¶ 8, Ex. B at
15 77 ("[WCJ] does not provide a Law Library. Send legal information requests directly to the
16 Whatcom County Law Library or the Public Defender's Office.").) Defendants claim Plaintiff
17 made frequent requests to the law library and took full advantage of the system provided. (Jones
18 Dec. at ¶ 21; *see* Jones Dec., Ex. B at 35, 43, 212-14; Pl.'s Dec., Ex. C at 94-98.)
19   Under his second claim, Plaintiff argues Chief Jones actively interfered with his ability to
20 litigate because she denied his requests for legal materials. (Am. Compl. at 11; Resp. at 23-34;
21 Pl.'s Dec., Ex. C at 94-98, Ex. I at 142-144.) Plaintiff alleges Chief Jones entered memorandum
22 limiting his ability to access legal materials from the law library, including documents related to
23 challenging his conditions of confinement and notary services. (*Id.*)

Defendants respond that Plaintiff's ability to access legal materials was limited by Chief Jones only in respect to non-case related material requests. (Jones Dec. at ¶ 21-22, Ex. B at 159.) In May 2016, while at WCJ, Plaintiff requested "vast quantities" of the Uniform Commercial Code ("UCC") and accrued non-cased related copying costs of $646.78. (*Id.*; Pl.'s Dec., Ex. F at 137.) Plaintiff paid the initial copying costs, but eventually accrued a deficiency balance of $44.20 on his copying requests, and consequently, Plaintiff's later requests for non-case related materials were not provided. (Jones Dec. at ¶ 22, Ex. B at 206; Pl.'s Dec., Ex. J at 146.) Defendants assert that case related materials were always provided to Plaintiff regardless of any deficiency balance on non-case related materials. (Jones Dec. at ¶ 22.)

        *ii.*    *Eighth Amendment Claims*

Plaintiff claims that all Defendants, except for "Unknown Booking Officer" and "Unknown Mailroom Officer," violated his Eighth Amendment right to be free of cruel and unusual punishment due to various actions undertaken by WCJ officials and jail conditions. (Am. Compl. at 12-17; Resp. at 25-26.) Plaintiff first alleges that WCJ is "a condemned building" and "a safety and fire hazard" as declared by the Mayor of Bellingham and the Bellingham Fire Department. (Am. Compl. at 12; Pl.'s Dec. at ¶¶ 35-37.) Plaintiff alleges he addressed this issue with Chief Jones and Lieutenant Stach only to be told it was a "non-grievable issue." (Am. Compl. at 13; Pl.'s Dec. at ¶ 38.) Defendants contend the physical buildings that comprise WCJ have never been condemned. (Jones Dec. at ¶ 2.)

Next, Plaintiff alleges that the food served at WCJ did not provide adequate nutrition. (Am. Compl. at 13; Resp. at 25-26.) Plaintiff alleges his health significantly deteriorated due to the quality of meals served at WCJ and that he lost over 20 pounds because of the lack of adequate caloric intake. (Am. Compl. at 13-14.) Defendants argue that they responded to

1  Plaintiff's nutritional complaints, but Plaintiff refused to be evaluated by the Jail's medical staff.
2  (Jones Dec. at ¶ 17, Ex. C at 216-17.)

3  Plaintiff additionally alleges that while he was housed in administrative segregation he did not have access to water for upwards of three days and was subjected to inhumane conditions of living. (Am. Compl. at 13-15; Resp. at 25-26; Pl.'s Dec. at ¶¶ 40-48.) Plaintiff alleges that, while placed in administrative segregation, his water was shut off for three days because a next-door inmate was flooding his cell. (Am. Compl. at 14-15.) Plaintiff alleges he attempted to grieve his inability to access water, but Chief Jones and Lieutenant Stach failed to respond to the situation. (*Id.*; Pl.'s Dec. at ¶¶ 46-48.)

Plaintiff alleges on another occasion where he was isolated in administrative segregation because of a nervous breakdown, he was placed in the "rubber room," which deprived him of water, a bed, and required him to defecate through a grate on the floor. (Am. Compl. at 15; Pl.'s Dec. at ¶¶ 49-54.) Plaintiff alleges he attempted to grieve this issue by writing a kite and by writing to Chief Jones and Lieutenant Stach, but Plaintiff alleges his kite was never taken and that Chief Jones and Lieutenant Stach never responded to his written request. (*Id.*) Defendants contend Plaintiff's placement in administrative segregation occurred due to WCJ's medical staff expressing concern about Plaintiff's behavioral health and safety. (Jones Dec. at ¶ 5.) Defendants also claim that all efforts were made to ensure Plaintiff's placement in administrative segregation was reasonably comfortable and that Plaintiff had access to food, water, and medical care. (*Id.*)

Finally, Plaintiff alleges under this claim that on his last day at WCJ, Deputy Kiele forcibly stripped his clothes off during a search before he was transferred to DOC custody. (Am. Compl. at 17; Resp. at 25-26; Pl.'s Dec. at ¶¶ 55-61.) Defendants respond that Deputy Kiele

merely observed Plaintiff's transfer to DOC custody and did not have any physical contact with Plaintiff during his transfer. (Kiele Dec. (Dkt. # 36) at ¶¶ 2-3; Jones Dec. at ¶¶ 24-29.)

### iii.   Fourteenth Amendment Claims

Plaintiff argues Chief Jones, Lieutenant Stach, and "Unknown Booking Officer" violated his substantive and procedural Fourteenth Amendment due process rights by placing him in administrative segregation without a hearing to contest the placement and by failing to return his personal property after a stay at the Western State Hospital. (Am. Compl. at 17-21; Resp. at 26-29; Pl.'s Dec. at ¶¶ 62-77.) Plaintiff alleges he did not receive a hearing or any chance to contest his placement in isolation. (Am. Compl. at 18; Resp. at 26-29; Pl.'s Dec. at ¶¶ 62-70.) Plaintiff alleges that, at multiple times during his stay at WCJ, officers would take his personal property and not return it back to him, including his legal materials. (Am. Compl. at 18-19; Pl.'s Dec. at ¶¶ 71-77; Pl.'s Dec., Ex. L at 156-60.) Plaintiff additionally alleges he was deprived of a liberty interest concerning his name because WCJ officials continually referred to him as "Kier Keand'e Gardner" instead of his preferred name of "Kier Keand'e." (Am. Compl. at 19-20.; Pl.'s Dec. at ¶¶ 78-86; Pl.'s Dec., Ex. N at 165-70.)

Based on concern for the Plaintiff's mental health, Plaintiff spent multiple two-week periods at Western State Hospital while he was incarcerated at WCJ. (Jones Dec. at ¶ 3.) After his return from a commitment in 2015, WCJ staff attempted to return Plaintiff's property that had been stored during his absence, but he refused to accept the property. (Jones Dec. at ¶ 18.) Plaintiff's legal name of "Kier Keand'e Gardner" was used for administrative purposes during his time at WCJ. (Jones Dec. at ¶ 18.)

     *iv.*  *First Amendment Claim*

Finally, Plaintiff claims his First Amendment rights were violated by an "Unknown Mailroom Officer" at WCJ. (Am. Compl. at 22-23; Resp. at 29-30; Pl.'s Dec. at ¶¶ 87-91.) In July 2016, Plaintiff attempted to mail a letter to the Department of Justice regarding the living conditions of WCJ. (Am. Compl. at 22; Jones Dec. at ¶ 23.) Plaintiff claims he included a newspaper article from the Bellingham Herald wherein Chief Jones and Sherriff Elfo allegedly reported WCJ was condemned and uninhabitable. (Am. Compl. at 22; Pl.'s Dec. at ¶ 88.) Defendants respond that Plaintiff's letter was returned to him by WCJ staff with instructions to place the letter in the appropriate "legal mail" envelope for mailing. (Jones Dec. at ¶ 23.)

  **C.**  **Whatcom County Jail Grievance Procedure**

Defendants submitted a declaration from Chief Jones detailing WCJ's grievance policy. (Jones Dec. at ¶¶ 1, 7-10, 14-15.) Plaintiff included a copy of the WCJ Inmate Orientation Handbook, as well as a relevant portion detailing the grievance procedure from the Whatcom County Sherriff's Office Corrections Policy and Procedure Manual, as exhibits to his declaration. (Pl.'s Dec., Ex. B at 69-92, Ex. M at 162-163.) Both the kiting and grievance procedure are detailed in the WCJ Inmate Orientation Handbook. (Jones Dec. at ¶¶ 13, 15; Pl.'s Dec., Ex. B at 72-75.)

An inmate may request a kite from any corrections deputy at WCJ. (Jones Dec. at ¶ 7.) Inmates may request multiple kites as they are used for a variety of purposes, such as receiving general information, receiving a response from a prison official regarding a question or request, or inquiring about medical care, but are generally the first step in making a complaint. (*Id.*) Kites are reviewed by prison officials and issues are frequently resolved at the first level of review. (*Id.*

at ¶ 8.) If the complaint is not resolved at the first level of review, the inmate is directed to use a kite to contact the next level of authority depending on the nature of the complaint. (*Id.*)

If the inmate is unable to have their complaint resolved at the second level of review, the inmate must request a grievance form from any deputy to properly grieve their complaint. (Jones Dec. at ¶ 9; Pl.'s Dec., Ex. B at 74.) Grievance complaint forms are made available to all inmates. (Jones Dec. at ¶ 15.) The grievance complaint form number is logged, along with the name of the inmate, and the date it was given to them. (*Id.* at ¶ 9.) A kite that simply expresses displeasure with a WCJ policy, practice, or action does not constitute a grievance. (*Id.* at ¶ 15.)

Though the grievance forms may be collected at any time, there is a five-day time limit for how long grievances can be filed after a complaint response. (Jones Dec. at ¶ 9; Pl.'s Dec., Ex. B at 74.) Once the grievance is filed, the form is routed to an administrative lieutenant for investigation and a decision. (*Id.*) A written decision is routed back to the inmate, along with notice that they may appeal the decision to the chief corrections deputy within five days after receiving a decision. (*Id.*)

An appeal to the chief corrections deputy can be filed through a kite or a letter, and once received, the chief corrections deputy reviews the record and issues a finding. (Jones Dec. at ¶ 10; Pl.'s Dec., Ex. B at 75.) There is no administrative appeal of the chief corrections deputy's review. (*Id.*)

**D.      Plaintiff's Grievance History**

Defendants submitted evidence that Plaintiff filed 170 kites while he was incarcerated at WCJ.[1] (Jones Dec. at ¶ 12.) Pertinent to this action, Plaintiff filed several kites regarding his

---

[1] Plaintiff argues in his Response that this number is incorrect, and he instead submitted "close to 500 kites while in WCJ," but "[d]efendants either threw away most of his kites or now allege they do not have them." (Resp. at 13; Pl.'s Dec. at ¶ 5.)

ability to access the courts, access to legal resources, access to legal materials, and being referred to as "Kier Keand'e," rather than "Kier Keand'e Gardner" throughout his detention at WCJ. (Jones Dec. at ¶ 12, Ex. B at 25, 30-47, 49-60, 65-66, 80-83, 88-94, 100, 108, 167, 178, 212-214; Pl.'s Dec., Ex. A at 62-68, Ex. C at 94-98, Ex. I at 142-144, Ex. N at 165-70.) In November 2014, Plaintiff filed two kites regarding his nutritional concerns and weight. (Jones Dec., Ex. C at 216-17.) In August 2015, Plaintiff submitted three kites requesting the return of his personal property after returning from a stay at Western State Hospital. (Jones Dec., Ex. D at 219-22; Pl.'s Dec., Ex. L at 156-60.) Plaintiff did not submit any kites regarding the alleged condemnation of WCJ, kites related to his cell conditions while in administrative segregation, kites questioning any disciplinary actions taken against him based on being placed in administrative segregation housing, or any kites related to his attempt to mail the Department of Justice. (Jones Dec. at ¶ 16; *see* Jones Dec., Ex. B at 20-214; Pl.'s Dec., Ex. A at 62-68, Ex. C at 94-98, Ex. I at 142-144, Ex. N at 165-70.)

Despite submitting various kites regarding the above-referenced issues, Plaintiff did not file any grievance forms or grievance appeals related to any of his filed kites or the claims in his amended complaint. (Jones Dec. at ¶ 6.) Additionally, Defendants submitted the logs of all grievances filed in the WCJ from 2014-2016. (Jones Dec., Ex. A at 11-18.) Defendants' submitted logs further demonstrate Plaintiff did not file a grievance regarding any of the claims in his amended complaint. (*See id.*)

### III. LEGAL STANDARDS

#### A. Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

    Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

**B.     Section 1983 Claims**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of his rights protected by the Constitution or created by federal statute; and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act he was legally required to do that caused the deprivation complained of. *Id.* (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

## IV.     DISCUSSION

Defendants' Motion argues Plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), prior to bringing this action. (Def.'s Mot. at 6.) In the alternative, Defendants argue Plaintiff's causes of action present no genuine disputes of material fact, and therefore, summary judgment dismissing all claims is appropriate. (*Id.* at 8.) Plaintiff argues he exhausted all available administrative remedies because his submitted kites exhausted the grievance policy and because circumstances at WCJ rendered its administrative remedies effectively unavailable to him. (Resp. at 14-18.)

Based on the record before the Court, Plaintiff failed to file grievances regarding any of his kites or claims in this matter. As explained further below, due to Plaintiff's failure to allege facts sufficient to demonstrate he exhausted his available administrative remedies, or that

administrative remedies were made effectively unavailable to him by WCJ officials, summary judgment is appropriate pursuant to the PLRA. [2]

### A.  Exhaustion under the Prison Litigation Reform Act

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) accord, *Jones v. Bock,* 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA"); *Albino v. Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (en banc). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The prisoner must complete the administrative review process in accordance with the applicable rules. *Woodford*, 548 U.S. at 92-95 (requiring "proper" exhaustion, meaning full compliance by a prisoner with all procedural requirements of an institution's grievance process).

Defendants bear the initial burden of showing there was an available administrative remedy and that Plaintiff did not exhaust that remedy. *Albino*, 747 F.3d at 1169, 1172. Once that showing is made, the burden shifts to Plaintiff, who must either demonstrate he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative

---

[2] The parties additionally addressed whether Defendants were entitled to qualified immunity on Plaintiff's claims. (Def.'s Mot. at 16-19; Resp. at 30-33.) Having decided Plaintiff failed to administratively exhaust his claims before bringing this action, the Court declines to address whether Defendants are entitled to qualified immunity.

REPORT AND RECOMMENDATION - 13

remedies effectively unavailable to him." *Id.* at 1172. The Supreme Court has previously explained administrative remedies are deemed "unavailable" to an inmate: (1) where the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is opaque and incapable of use; and (3) where administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *Fuqua v. Ryan*, 890 F.3d 838, 850 (9th Cir. 2018). Because failure to exhaust is an affirmative defense Defendants must plead and prove, the ultimate burden rests with Defendants. *Albino*, 747 F.3d at 1172.

Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to Plaintiff, shows a failure to exhaust. *Albino*, 747 F.3d at 1166, 1168; Fed. R. Civ. P. 56(a). If administrative remedies have not been exhausted at the time an action is brought, the action must be dismissed without prejudice. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

### B.     Exhaustion of Administrative Remedies

In this case, Defendants submitted evidence that WCJ provides an administrative grievance process and Plaintiff failed to utilize it regarding any of his claims alleged in this action. (Jones Dec. at ¶¶ 6-10, 12-13, Ex. A at 11-18.) This evidence satisfies Defendants' initial burden of showing there was an available administrative remedy and that Plaintiff failed to

1  exhaust that remedy because he did not complete the grievance process in accordance with WCJ

2  rules. *See Woodford*, 548 U.S. at 92-95.

3      Plaintiff argues in his response and attached declaration that various kites he submitted

4  regarding his claims sufficed as grievances.[3] (Resp. at 13-18; Pl.'s Dec. at ¶¶ 3, 12, 38-39, 46-47,

5  52-54, 61, 80.) However, Plaintiff's response and declaration both fail to present reasons

6  explaining how his filed kite requests serve as grievances under the procedures outlined in

7  WCJ's grievance policy. The record clearly demonstrates WCJ's system for filing grievances

8  requires the inmate to file a grievance form after two layers of review on a kite request. (Jones

9  Dec. at ¶¶ 7-10, 14-15; Pl.'s Dec., Ex. B at 73-75, Ex. M at 162-163.) The grievance procedure

10  inmates must follow is explained in the WCJ Inmate Orientation Handbook. (Pl.'s Dec., Ex. B at

11  73-75.)

12      It is clear from the record that Plaintiff did not file any grievance forms or appeals on any

13  of his submitted kites addressing his claims in this action during his incarceration at WCJ. (Jones

14  Dec. at ¶¶ 6, 13; *see* Jones Dec., Ex. A at 11-18.) It is also clear from the record that Plaintiff was

15  familiar with WCJ's administrative grievance process because Plaintiff was knowledgeable of

16  the kite system and WCJ's grievance policy is included in the WCJ Inmate Orientation

17  Handbook, which Plaintiff addressed in both his response and declaration. (Pl.'s Dec., Ex. B at

18  72-75, Ex. M at 162-163.) Moreover, it is clear from the record that Plaintiff failed to file a kite

19  on any of his claims related to: (1) the alleged condemnation of WCJ; (2) his cell conditions and

20

---

21  [3] Defendants additionally argue that Plaintiff's attached declaration to his response does not comply with 28 U.S.C. § 1746 because it bears a deficient signature, and therefore, Plaintiff's declaration lacks evidentiary force. (Reply at 3.) Plaintiff signed his attached declaration as "Keand'e". (Pl.'s Dec. at 60.)

22  It's been submitted in the record at length that Plaintiff frequently rejects the use of his legal name "Kier Keand'e Gardner" and instead prefers "Kier Keand'e." (Order (Dkt. # 11) at 2-3; Pl.'s Dec. at ¶¶ 78-86; *see*

23  Pl.'s Mot. (Dkt. # 42).) Despite Plaintiff's failure to sign under his legal name, the Court has considered Plaintiff's notation as "Keand'e" as sufficient for Plaintiff's declaration being sworn in considering this matter.

REPORT AND RECOMMENDATION - 15

hearing rights while placed in administrative segregation at WCJ; (3) the incident with Deputy Kiele; or (4) his attempt to mail the Department of Justice. (Jones Dec. at ¶ 16; *see* Jones Dec., Ex. B at 20-214; Pl.'s Dec., Ex. A at 62-68, Ex. C at 94-98, Ex. I at 142-144, Ex. N at 165-70.) Therefore, the record demonstrates Plaintiff failed to exhaust the claims addressed in his amended complaint under the grievance procedures authorized at WCJ, as required by the PLRA, to maintain this action. *See* 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 85; *Albino*, 747 F.3d at 1165.

Plaintiff additionally failed to demonstrate an impediment existed making WCJ's available administrative remedies for grievances effectively unavailable to him. *See Albino*, 747 F.3d at 1172; *Ross*, 136 S. Ct. at 1859-60. Plaintiff generally contends he was unable to file a grievance because he was repeatedly denied a grievance form by WCJ staff, "thwarted" by WCJ staff who would not file his kite request forms as grievances forms, or because he was told his issues at WCJ were "non-grievable." (Resp. at 13-14, 17-18; Pl.'s Dec. at ¶¶ 3, 12, 38-39, 46-47, 52-54, 61, 80.) However, Plaintiff's statements regarding the unavailability of WCJ's grievance policy to him are vague and conclusory—they lack any detail regarding specific instances of interference undertaken by an identifiable WCJ official or WCJ floor officer concerning the claims addressed in his amended complaint. (*See* Pl.'s Dec. at ¶¶ 3, 12, 38-39, 46-47, 52-54, 61, 80.) Because Plaintiff's general allegations of being denied grievance forms by WCJ staff fail to sufficiently demonstrate that the WCJ grievance process was effectively unavailable to him, Plaintiff's statements are insufficient to establish a genuine issue of material fact. *See Hernandez*, 343 F.3d at 1112; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (vague and conclusory allegations are not sufficient to withstand a motion for summary judgment).

Accordingly, Plaintiff has failed to establish an impediment existed making WCJ's available administrative remedies effectively unavailable to him. *Albino*, 747 F.3d at 1172.

In conclusion, viewing the evidence in Plaintiff's favor, the Court concludes Defendants are entitled to summary judgment based on Plaintiff's failure to exhaust his available administrative remedies and Plaintiff's amended complaint should be dismissed without prejudice. *See McKinney*, 311 F.3d at 1199; *Wyatt*, 315 F.3d at 1120.

## V. CONCLUSION

For the foregoing reasons, this Court recommends Defendants' Motion (dkt. # 34) be GRANTED, that Plaintiff's Motion (dkt. #42) be DENIED as moot, and that this matter be DISMISSED without prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 24, 2020**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Marsha J. Pechman.

Dated this 29th day of June, 2020.

*[signature]*

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18